FRANK KOTERZINA, APPELLEE, V. COPPLE CHEVROLET, INC., A NEBRASKA CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND STATE OF NEBRASKA, NEBRASKA SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLEE.

510 N.W.2d 467

Filed July 6, 1993.   No. A-92-821.

Thomas J. Culhane and Ruth W. Beyerhelm, of Erickson & Sederstrom, P.C., for appellant.

Michael G. Goodman, of Cannon, Goodman, O'Brien & Grant, P.C., for appellee Koterzina.

Jill Gradwohl Schroeder, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Second Injury Fund.

CONNOLLY, HANNON, and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

Copple Chevrolet, Inc., appeals the order of the Workers' Compensation Court awarding Frank Koterzina, the plaintiff-appellee, workers' compensation benefits. Copple does not dispute that Koterzina is totally disabled and entitled to disability benefits. Copple claims, however, that portions of the compensation court's award were in error. Specifically, Copple asserts that the compensation court's award of benefits to pay for the home health care services provided to Koterzina by his wife, Mary Lou Koterzina, are excessive and not supported by the evidence. Copple also objects to Koterzina's recovery of certain construction costs in his new home as "appliances" or "supplies," pursuant to Neb. Rev. Stat. § 48-120 (Reissue 1988). Regarding the remainder of Koterzina's award, Copple asserts that the Second Injury Fund should be found liable for medical and hospital expenses, and Copple believes that the court erred in not requiring the Second Injury Fund to pay for the entire weekly permanent total disability benefit. For the reasons recited below, we affirm the award as modified.

## SCOPE OF REVIEW

A decision by the Workers' Compensation Court after rehearing has the same force and effect as a jury verdict, and findings of fact will not be set aside unless, after reviewing the record in the light most favorable to the successful party, this court determines that those findings are clearly erroneous. *Hernandez v. Hawkins Constr. Co.*, 240 Neb. 129, 480 N.W.2d 424 (1992); *Wiese v. Becton-Dickinson Co.*, 239 Neb. 1033, 480 N.W.2d 156 (1992); *Miller v. Goodyear Tire & Rubber Co.*, 239 Neb. 1014, 480 N.W.2d 162 (1992); *Anthony v. Pre-Fab Transit*

*Co.*, 239 Neb. 404, 476 N.W.2d 559 (1991); *Omaha Processors v. Bloomquist*, 237 Neb. 223, 465 N.W.2d 731 (1991). Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 1992), this court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991).

## FACTS

The record reveals that Koterzina was injured in 1959 when a ditch caved in on him while he was doing construction work. He apparently injured his cervical spine at that time, but the injury did not produce lasting symptoms until 1960 when Koterzina was swimming and performed a horizontal dive across the water. At that time, it was discovered that he had a fracture of the fifth cervical vertebra and a cervical myelopathy, or injury to the spinal cord itself. He sustained a spastic paraparesis of the right arm and lower extremities, and a mildly spastic bladder. In other words, the spinal cord was injured so severely that he lost the ability to walk without a limp and to use his right hand.

Copple hired Koterzina to be a salesman, fully aware of his prior injury. On January 28, 1989, while working for Copple, Koterzina was injured when the car he was driving hydroplaned and slid into a bridge abutment. He hit the roof of the car with his forehead, but was not knocked unconscious. He did not have a seatbelt on, and he sustained five rib fractures, a scalp contusion, a lip laceration, and a left distal fibular fracture. Most notably, he sustained a fifth cervical vertebral body burst fracture with cervical myelopathy. Koterzina was hospitalized and went through rehabilitation at Immanuel Medical Center in Omaha. The physicians testified by deposition that as of May 1990, Koterzina had reached maximum medical improvement, and one ranked his physical impairment at a 65-percent

impairment of the body as a whole.

The Workers' Compensation Court found, and the parties do not dispute, that as a result of his 1959 and 1960 injuries, Koterzina sustained a partial permanent disability which would qualify him for benefits under the Second Injury Fund, should the disability from a second injury be substantially greater than that which would have resulted from the prior injury alone. The record reveals that the court also found that Koterzina was 100-percent disabled since the car accident and stated specifically that the accident of January 28, 1989, "standing alone and of itself, produced a 70 percent loss of earning power." The compensation court ordered Copple to pay all medical and hospital services, which at the time of the rehearing exceeded $262,000. Copple was also ordered to pay Koterzina $140 per week for home health care provided by Koterzina's wife, $18,376 for construction costs to Koterzina's new home to make it handicapped-accessible, the whole of Koterzina's temporary total disability benefits, and 70 percent of the weekly permanent total disability payments. The Second Injury Fund was ordered to pay 30 percent of the weekly permanent total disability payments.

Copple appeals, and its assignments of error may be distilled into the assertion that the compensation court erred in (1) ordering Copple to pay for Mary Lou Koterzina's services; (2) ordering Copple to pay for the home improvements; (3) failing to require the Second Injury Fund to pay for medical expenses; (4) finding that standing alone, the second injury produced a 70-percent loss of earning capacity; and (5) apportioning 70 percent of Koterzina's permanent total disability benefits to Copple.

## HOME HEALTH CARE

The Nebraska Supreme Court has held that a claimant is entitled to recover his or her cost of home health care if three requirements are met: First, the employer must be aware of the compensable disability and the employee's need for the home care; second, the care provided by the spouse or health care worker must be beyond normal household duties; and third, there must be a reasonable means of determining the value of

such services. *Quinn v. Archbishop Bergan Mercy Hosp.*, 232 Neb. 92, 439 N.W.2d 507 (1989). See, also, *Kidd v. Winchell's Donut House*, 237 Neb. 176, 465 N.W.2d 442 (1991); *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978). Copple asserts that the care provided by Mary Lou Koterzina never rose above the level of normal household duties, and even if it did, there was insufficient evidence to determine the value of these services.

Case law states that examples of compensable services include serving meals in bed, bathing, laying out clothes and assisting in dressing, administering medication, and assisting with toilet regimes. See, *Kidd, supra*; *Quinn, supra*; *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr.*, 228 Neb. 38, 421 N.W.2d 25 (1988).

A review of the record in a light most favorable to the successful party reveals that Mary Lou Koterzina is required to assist Koterzina with his bedside urinal and that she cleans him after encopresis, inserts rectal suppositories every other day, assists in bathing him, assists in dressing him, does all the extra laundry associated with the care of an incontinent patient, and assists with transfers from his scooter to a chair or car. Testimony by Cindy Brennfoerder, a home health care provider, indicated that the services Mary Lou Koterzina provides are comparable to those provided by a home health care aide, except for the suppository placement, which could only be provided by a licensed practical nurse or registered nurse. Brennfoerder testified that she charges $11.50 per hour for the services of home health aides and $42 for a nurse to visit and insert a suppository. She also testified that no health care provider would be likely to respond in the night to clean up an accident unless that worker was a 24-hour live-in aide. Testimony by both Mary Lou Koterzina and Brennfoerder supports the compensation court's finding that Mary Lou Koterzina provides a minimum of 14 hours a week in extraordinary services for her husband, entitling her to $140 a week in compensation. The compensation court did not err in determining that the services were compensable, and said portion of its order is affirmed.

## HOME IMPROVEMENTS

The Workers' Compensation Act provides that the employer "shall be liable for all reasonable medical, surgical, and hospital services, including . . . *appliances, supplies, prosthetic devices . . . as and when needed, which are required by the nature of the injury and which will relieve pain* or promote and hasten the employee's restoration to health and employment . . . ." (Emphasis supplied.) § 48-120. Copple rightly asserts that the Nebraska Supreme Court held in *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978), that the remodeling of an existing home was not recoverable as a medical expense. However, we note that the statute at the time of the accident in *Spiker* did not include the language "appliances, supplies . . . as and when needed, which are required by the nature of the injury." The Legislature did not provide a definition for these additional words. However, the Nebraska Supreme Court has consistently held that the terms of the Workers' Compensation Act are to be broadly construed to accomplish the beneficent purpose of the act. *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990).

It is clear from the record that the improvements to Koterzina's home make the home handicapped-accessible. Koterzina is essentially bound to a scooter or wheelchair, and without a ramp, these vehicles are rendered useless. He cannot turn a doorknob. He cannot raise his foot high enough to enter the shower, or lower himself safely onto a toilet. He cannot negotiate stairs. He cannot reach upper pantries. The modifications to his home are necessary as a result of his incapacity and are "required by the nature of [his] injury." Without these improvements and appliances, Koterzina cannot traverse from room to room, transfer safely to his car in the garage, or have a safe place to hide should a tornado pass through, an occurrence not uncommon in this part of the country. The issue then becomes, Do these improvements "relieve pain or promote and hasten the employee's restoration to health and employment"? See § 48-120.

Cases subsequent to *Spiker* have demonstrated the Nebraska Supreme Court's willingness to broadly interpret the terms of the act, and particularly these words. In *Canas v. Maryland*

*Cas. Co.*, 236 Neb. 164, 459 N.W.2d 533 (1990), the court upheld the compensation court's award entitling a worker to recover for the cost of his penile implant. The Nebraska Supreme Court discussed at length the statute's requirement that only devices which relieve "pain" are compensable. The court asserted that "pain" included the mental anguish the worker felt when his injury resulted in impotence and this condition threatened to destroy his marriage. It found that the implant was a device which was required by the nature of the injury and which would help to relieve the employee's "pain."

In the case at bar, Koterzina's "pain" is caused by the absolute and total loss of his independence in every fundamental and basic activity of daily living. We agree with the compensation court that Copple is required to compensate Koterzina for the expense of making his home handicapped-accessible.

## MEDICAL EXPENSES

Copple asserts that the Second Injury Fund should be liable for a percentage of Koterzina's medical expenses.

Under certain circumstances, the Workers' Compensation Act allows the employer to shift the burden of compensation payments to the Second Injury Fund. Specifically, if an employee with a preexisting disability subsequently sustains a compensable injury and the preexisting disability combines with this second injury to create a subsequent disability which is substantially greater than it would have been had the employee been able bodied, the employer is "liable only for the degree or percentage *of disability* which would have resulted from the last injury had there been no preexisting disability." Neb. Rev. Stat. § 48-128 (Reissue 1988). This section of the act does not mention medical, surgical or hospital expenses. The second injury provisions are limited to the percentage of "disability" the employer may shift. The only section of the Workers' Compensation Act providing for liability for medical expenses is § 48-120. This section provides that the "*employer* shall be liable for all reasonable medical, surgical, and hospital services." (Emphasis supplied.)

The general rules governing statutory construction and

interpretation provide that in the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; this court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991). Furthermore, it is not within the province of this court to read a meaning into a statute which is not warranted by the legislative language; neither is it within the province of this court to read anything plain, direct, and unambiguous out of the statute. In construing a statute, it is presumed that the Legislature intended a sensible, rather than an absurd, result. See, *Matrisciano v. Board of Ed. of Sch. Dist. No. 6*, 236 Neb. 133, 459 N.W.2d 230 (1990); *Houska v. City of Wahoo*, 235 Neb. 635, 456 N.W.2d 750 (1990); *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990).

In a well-reasoned and thoughtful opinion, another panel of the Nebraska Court of Appeals has declined to interpret this section of the act to allow the employer to shift the cost of medical expenses to the Second Injury Fund. *Lozier Corp. v. State*, 1 Neb. App. 567, 501 N.W.2d 313 (1993). It is apparent that the plain language in the act does not impose the burden of medical, surgical or hospital expenses on the Second Injury Fund; therefore, we agree with the ruling of the compensation court when it declined to assess such expenses against the Second Injury Fund.

## APPORTIONMENT OF LOSS OF EARNING CAPACITY

Copple finally asserts that the compensation court erred when it found that the second injury, considered alone and by itself, caused Koterzina a 70-percent disability and thus required Copple to pay 70 percent of the weekly permanent total disability payments. It is undisputed that Koterzina had a preexisting disability greater than 25 percent and that Copple was aware of this disability.

As noted above, in specific cases the employer may shift liability for disability payments to the Second Injury Fund if it can show that the employee fulfills the requirements of

§ 48-128. The statute provides that to qualify, an employee must have (1) at least a 25-percent preexisting disability (2) of which the employer is aware and (3) that the subsequent injury must result in "additional permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself." See, also, *Norris v. Iowa Beef Processors,* 224 Neb. 867, 402 N.W.2d 658 (1987). If the employer can show this, then it is "liable only for the degree or percentage of disability which would have resulted from the last injury *had there been no preexisting disability.*" (Emphasis supplied.) § 48-128.

The issue presented by this assignment of error is the amount of liability which must be assessed against the Second Injury Fund pursuant to statute. Nevertheless, because of the apparent confusion in interpreting the statute, we will take a step-by-step analysis of the statute, beginning with whether or not Koterzina qualifies under the statute as having a combined disability which is substantially greater than that suffered from the second injury considered alone.

The Nebraska Supreme Court held in *Norris* that "disability" is the loss in earning capacity. The loss in earning capacity for which the Second Injury Fund is liable is that loss which is occasioned because of the effect which the preexisting disability had on the subsequent injury. In *Sherard v. Bethphage Mission, Inc.,* 236 Neb. 900, 464 N.W.2d 343 (1991), the employee had a preexisting back injury which had resulted in an 80-percent loss of earning capacity. The employee was subsequently injured and sustained a " '15% permanent partial disability to [the employee's] body as a whole.' " *Id.* at 907, 464 N.W.2d at 348. The compensation court found that the employee was essentially unemployable and that, therefore, the combined disabilities resulted in a disability substantially greater than the disability from the second injury alone. It then ordered the Second Injury Fund to pay 85 percent of the employee's disability payments. The order was affirmed by the Nebraska Supreme Court, which stated that it could not conclude that the compensation court was wrong in finding

that the Second Injury Fund was liable.

In the case at bar, the compensation court found that the second injury, "standing alone and of itself," caused Koterzina a 70-percent disability. It also found that Koterzina is permanently totally disabled. These findings are supported by the record and essentially qualify Koterzina as the type of injured employee for which Copple may now defer some percentage of the disability liability to the Second Injury Fund. However, given these findings and proper application of the statute, we conclude that the compensation court's subsequent allocation of liability was in error. The critical phrase of § 48-128 provides that if factors giving rise to a shifting of liability pursuant to the Second Injury Fund legislation are met, then the employer is "liable only for the degree or percentage of disability which would have resulted from the last injury *had there been no preexisting disability*." (Emphasis supplied.) In *Parker v. St. Elizabeth Comm. Health Ctr.*, 226 Neb. 526, 412 N.W.2d 469 (1987), the employee had polio as a child and had sustained a permanent disability to his back. While working for the health center, he tore some cartilage in his knee. He was subsequently determined to be totally disabled. His physician testified that but for the polio, the employee would have been able to return to work and would not have sustained a total disability. The compensation court awarded the employee temporary total disability benefits and ordered the fund to make those payments. The Nebraska Supreme Court affirmed the order, holding that the purpose of the fund is to allow the employer to pay only that portion of the total injury which would have occurred without the preexisting condition.

In the case at bar, a review of the record indicates that Dr. Leonard Weber testified by deposition and by letter to counsel that with a reasonable degree of medical certainty, Koterzina would not have sustained any disability from his injuries received in the January 28, 1989, car accident absent his unstable cervical spine. It was only because of Koterzina's old injury and unstable cervical spine that he sustained a bursting fracture of his fifth cervical vertebra and resulting myelopathy when he hit his head in the car accident. This testimony is undisputed in the record. The Nebraska Supreme Court has

long held that an award against an employer must be based upon facts in the record. See *Kramer v. DeNoyer*, 240 Neb. 805, 484 N.W.2d 447 (1992). Accordingly, based on the record, we hold that the Workers' Compensation Court erred in requiring Copple to pay 70 percent of Koterzina's disability benefit because this degree of disability would not have resulted from the last injury had there been no preexisting disability. We therefore modify this portion of the Workers' Compensation Court's order to direct the Second Injury Fund to provide 100 percent of the temporary total and permanent total disability benefits and Copple to pay 0 percent of those benefits. See *Parker, supra*.

Given this court's appellate findings between the employer and the employee regarding home health care and handicapped-accessible home improvements, the employee is entitled to attorney fees for this appeal in the amount of $1,500. See Neb. Rev. Stat. § 48-125 (Cum. Supp. 1992).

AFFIRMED AS MODIFIED.