SIDNEY OWEN, APPELLEE, V. AMERICAN HYDRAULICS, INC., AND AETNA CASUALTY & SURETY COMPANY, APPELLANTS.

578 N.W.2d 57

Filed May 22, 1998. No. S-97-837.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellants.

Sheldon M. Gallner and Laura L. Pattermann, of Gallner & Gallner, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

Following trial, a single judge of the Nebraska Workers' Compensation Court determined that Sidney Owen sustained an injury during the course and within the scope of his employment with American Hydraulics, Inc. (AHI), and awarded him temporary partial disability benefits and medical expenses. The trial court further found that because of conflicting medical evi-

dence, it could not determine certain issues without resort to guess and speculation; therefore, it ordered the parties to seek appointment of an independent medical examiner pursuant to Workers' Comp. Ct. R. of Proc. 63 (1995). AHI and its insurer, Aetna Casualty & Surety Company (Aetna), appealed to a review panel of the Workers' Compensation Court, which vacated the award because of what it perceived as ambiguous findings and remanded the case for the purpose of clarifying the ambiguity. AHI and Aetna appeal from the order of the review panel. We conclude that the review panel was correct in reversing the award, and we remand the cause with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

In his petition, Owen alleged that on or about April 3, 1995, while employed by AHI as a welder, he sustained "cumulative trauma injuries to his hands and upper extremities caused by the repetitive job duties associated with his employment." Owen further alleged that these injuries were "diagnosed as bilateral median proximal nerve entrapment syndrome, bilateral carpel [sic] tunnel nerve entrapment syndrome and bilateral cubital tunnel entrapment syndrome" and that these conditions precluded him from performing the duties of his employment and resulted in a permanent partial disability. In their answer, AHI and Aetna admitted that AHI employed Owen on the date of his alleged injury, but denied Owen's allegations concerning the occurrence of the injury and the nature and extent of injury and damage.

AHI manufactures and repairs coupling devices for railcars. Owen has been employed by AHI since 1983. In 1988 or 1989, Owen became a "shaft welder," which required repetitive handling of steel shafts between 29 and 41 inches long and weighing between 60 and 100 pounds. Beginning in March 1994, Owen experienced intermittent pain in both hands and arms. He mentioned this to his supervisor, but did not submit a workers' compensation claim at that time. By April 3, 1995, Owen was experiencing a burning sensation in his hands and shooting pain into his shoulders, which prevented him from grasping materials in his work. After Owen filed an accident report, AHI referred him to the Occupational Health Department of St.

Joseph Hospital in Omaha, where he was seen on eight or nine occasions. Owen was subsequently examined and treated by several other physicians. Although Owen was transferred to a position requiring less heavy lifting, he continued to experience pain in his hands and arms.

The medical evidence adduced at trial included reports and records from several physicians. Dr. David A. Clough, an orthopedic surgeon, examined Owen on March 4 and April 8, 1994, and on August 1, 1995. Based upon his examinations and his review of tests and examinations performed by other physicians, Clough was unable to formulate a diagnosis with respect to Owen's symptoms of pain in his hands and arms and, therefore, could not determine whether the symptoms were caused or aggravated by his work. Clough was also unable to express an opinion as to whether Owen had reached maximum medical improvement or whether his condition was of a permanent nature.

Dr. Jack A. McCarthy, also an orthopedic surgeon, examined and treated Owen from May 1995 until approximately February 1996. In a signed letter to Owen's attorney dated October 9, 1995, McCarthy stated:

> It would still be my thought that he has significant compromise over the forearm area. I think his job as a welder and the heavy associated work activities over the last several years did contribute to the development of his symptoms.
>
> . . . .
>
> We will continue to work with this gentleman. As a ball park figure, tenosynovitis of the upper extremity with symptoms such as Mr. Owen has usually, if consistent with lateral epicondylitis with mild peripheral nerve entrapment would have approximately a 10% permanent partial impairment to the involved upper extremity. This is obviously our best guess in light of the fact we are continuing to work through this with him. He may or may not come to additional intervention for either his median nerve, lateral epicondylar or dorsal wrist discomfort.

The record also contains a January 31, 1996, letter written by Dr. John M. Kalec reporting his examination of Owen. In the

letter, Kalec notes that Owen had no occupations other than his employment as a welder at AHI. Based on the history he obtained and physical examination he conducted, Kalec stated his impression that Owen suffered from "[b]ilateral median proximal nerve entrapment syndrome, as well as bilateral carpal tunnel nerve entrapment syndrome." In a February 21, 1996, letter to Owen's attorney, Kalec stated:

> It is my medical opinion that the repetitive work that Mr. Owen did at Rail Car Nebraska where he was a welder was a material and substantial factor in his bilateral arm problems. It was felt he had a bilateral median proximal nerve entrapment syndrome, as well as bilateral carpal tunnel nerve entrapment syndrome and bilateral cubital tunnel entrapment syndrome. I do feel he is in need of surgical correction.

Kalec opined that Owen had a combined total of "188% impairment of upper extremity," which he translated to a "113% impairment of the whole person."

Dr. James R. Rochelle, an orthopedic surgeon, examined Owen on September 6, 1996. In his report of that examination, he listed diagnoses of bilateral carpal tunnel syndrome, prior presentations of tendinitis and DeQuervain's syndrome, lateral epicondylitis of both elbows, possible presentation of pronator syndrome and radial tunnel syndrome, and dorsal ganglion cyst and degenerative joint disease of the radial-ulnar joint of the left wrist. Rochelle expressed his "strong opinion that these are work-related conditions" and noted that "[i]t certainly seems that the repetitive heavy work that he did at American Hydraulic [sic], Inc. over an eight-plus year period of time has caused and significantly aggravated these conditions." He concluded:

> In view of the fact that he has not had definitive treatment at this time, any rating that I might give him at this time is considered provisional. I consider that he has a ballpark of 10 to 15% of each of the upper extremities at the level of the forearms, possibly at the elbows would be his current disability rating.

On December 12, 1996, following trial, the judge determined that Owen "was injured in the course and scope of his employment on April 3, 1995, when he suffered from the effect of per-

forming repetitive functions that resulted in cumulative trauma and injuries to the hands, arms, muscles, ligaments and nerves bilaterally." Based upon evidence that McCarthy had restricted Owen to working half days from June 12 to August 11, 1995, the judge awarded benefits for a 50-percent temporary partial loss in earning capacity during that period, and ordered AHI and Aetna to pay certain hospital and medical expenses.

The judge then stated that "[t]he issue in this case is the nature and extent of [Owen's] injury" and noted the variance in the diagnoses and disability ratings expressed by the physicians who had examined Owen. The court concluded:

> The . . . medical evidence presented to the Court would require the Court to guess or speculate as to the exact nature of [Owen's] illness, his course of medical treatment, whether surgery is necessary or not, and the degree of impairment. The Court is not allowed to guess or speculate and it will not do so in this case.
>
> The Court will, therefore, require the parties to make application pursuant to Rule 63 for the appointment of an independent medical examiner to provide the parties with a sufficient learned and definite medical opinion as to the diagnosis and etiology of [Owen's] condition, together with an opinion as to whether or not that condition is related to [Owen's] employment and, if so, what course of medical treatment, including surgery if necessary, is appropriate and/or the degree of impairment, if any. In addition to the above, any other questions that the parties wish answered pursuant to Rule 63 shall be tendered to the independent medical examiner. This Court will retain jurisdiction of this case pending a report by the independent medical examiner to [Owen] and [to AHI and Aetna].
>
> If, after receipt of the independent medical examiner's report the parties are unable to agree on any of the above issues, a further hearing may be held upon motion by either party for such a determination by the Court.

On appeal by AHI and Aetna, two judges on the review panel of the Workers' Compensation Court found that the award was ambiguous in that the trial judge made a finding, without citing specific medical evidence, that Owen sustained an injury aris-

ing out of and in the course of his employment, but also found causation to be one of the unresolved issues to be referred to an independent medical examiner. The panel majority therefore concluded that the decision of the trial judge should be reversed and the case remanded to the trial judge "for the purpose of clarifying this obvious ambiguity." In addition, the same two judges concluded that the trial judge was "not clearly wrong in assigning an independent medical examination pursuant to Rule 63," but noted that under our holding in *Coco v. Austin Co.*, 212 Neb. 95, 321 N.W.2d 448 (1982), liability must first be established before the court may invoke its power to assign an independent medical examiner.

In a concurrence, the third judge on the review panel concluded that while the trial judge did not have authority under rule 63 to order the parties to arrange for an independent medical examination, it did have authority under Neb. Rev. Stat. § 48-120(5) (Reissue 1993) to obtain opinions from a physician or physicians appointed by the trial court to assist it in resolving any issue of medical fact or opinion. The concurring judge therefore determined that the case

should be remanded to the trial judge for the appointment of a physician or physicians to render opinions requested by the trial court or in the alternative the trial court is authorized to make findings of fact as to whether or not [Owen] has reached maximum medical improvement and if so, the extent of [Owen's] impairment and/or loss of earning power.

AHI and Aetna appealed from the order of the review panel, and we removed the matter to our docket on our own motion pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court.

## ASSIGNMENTS OF ERROR

In this appeal, AHI and Aetna assign errors by the trial judge and the review panel. They contend that the trial judge erred by (1) requiring the parties to make application for the appointment of an independent medical examiner while retaining jurisdiction over the matter after failing to rule on the permanency of Owen's injury as well as his need for future medical treat-

ment, (2) ordering AHI and Aetna to pay temporary partial disability benefits after Owen failed to establish entitlement to such benefits, and (3) determining that Owen's injuries occurred as a result of an accident during the course of his employment with AHI. AHI and Aetna contend that the review panel erred by (1) determining that the trial judge did not err in ordering the appointment of an independent medical examiner and (2) failing to rule that the trial judge should have dismissed Owen's petition when the judge found that he could not determine the nature of Owen's injury.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Cunningham v. Leisure Inn*, 253 Neb. 741, 573 N.W.2d 412 (1998); *Acosta v. Seedorf Masonry, Inc.*, 253 Neb. 196, 569 N.W.2d 248 (1997).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Cunningham v. Leisure Inn, supra*; *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997); *Acosta v. Seedorf Masonry, Inc., supra*. The findings of fact made by a workers' compensation judge on original hearing have the effect of a verdict and are not to be disturbed on appeal unless clearly wrong. *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997); *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996).

An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

## ANALYSIS

In order to resolve this appeal, we must first address the issue of when and under what circumstances the Workers' Compensation Court may require submission of medical issues to an independent medical examiner. Rule 63 provides in part:

> A. Once a dispute regarding medical, surgical, or hospital services furnished or to be furnished under the Nebraska Workers' Compensation Act has arisen any party may submit the dispute for a medical finding by an independent medical examiner. The court may also cause the employee to be examined by an independent medical examiner or other physician in order to assist it in resolving any issue of medical fact or opinion.

The statutory authority for the second sentence of this rule is § 48-120(5), which provides in part:

> Whenever the Nebraska Workers' Compensation Court deems it necessary, in order to assist it in resolving any issue of medical fact or opinion, it shall cause the employee to be examined by a physician or physicians selected by the compensation court and obtain from such physician or physicians a report upon the condition or matter which is the subject of inquiry.

In *Coco v. Austin Co.*, 212 Neb. 95, 99, 321 N.W.2d 448, 450 (1982), we interpreted this language to mean that the compensation court could request an opinion from a physician selected by the court "only in cases where liability has been established and there arise medical issues concerning such things as refusal of medical treatment or the necessity or sufficiency of medical treatment."

The statutory basis for the first sentence of rule 63A is Neb. Rev. Stat. § 48-134.01 (Reissue 1993). This statute authorizes the Workers' Compensation Court to "develop and implement an independent medical examiner system consistent with the requirements of this section." § 48-134.01(1). It further provides that an independent medical examiner "shall render medical findings on the medical condition of an employee and related issues as specified under this section." § 48-134.01(2). The next subsection of the statute provides:

> If the parties to a dispute cannot agree on an independent medical examiner of their own choosing, the compensation court shall assign an independent medical examiner from the list of qualified examiners to render medical findings *in any dispute relating to the medical condition of a claimant*, including, but not limited to, whether the injured employee is able to perform any gainful employment temporarily or permanently, what physical restrictions, if any, would be imposed on the employee's employment, whether the injured employee has reached maximum medical improvement, the existence and extent of any permanent physical impairment, and the reasonableness and necessity of any medical treatment previously provided, or to be provided, to the injured employee.

(Emphasis supplied.) § 48-134.01(3). This subsection differs from § 48-120(5) in that it enables a party to initiate the process of referring issues to an independent medical examiner and specifies the manner in which the examiner's report may be used. The examples of issues relating to the "medical condition of a claimant" as to which an independent medical examiner's opinion may be sought under this statute, while not exclusive, all pertain to the benefits to which a claimant is entitled and not to the issue of whether an entitlement exists. Therefore, consistent with our interpretation of § 48-120(5) in *Coco*, we interpret § 48-134.01 as applicable only to medical issues arising in cases where liability has been established. Neither of these statutes nor rule 63 permits the Workers' Compensation Court to appoint an independent medical examiner to express opinions on issues going to the determination of whether an employer is liable for workers' compensation benefits.

In this case, therefore, the trial judge would have had legal authority to refer medical issues to an independent medical examiner only if he had first made a finding that Owen met his burden of proving AHI and Aetna's liability. In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of or occurring in the course of the employment proximately caused an injury which resulted in disability compensable under the act. *U S*

*West Communications v. Taborski*, 253 Neb. 770, 572 N.W.2d 81 (1998); *Cunningham v. Prime Mover, Inc.*, 252 Neb. 899, 567 N.W.2d 178 (1997); *Dyer v. Hastings Indus.*, 252 Neb. 361, 562 N.W.2d 348 (1997). Moreover, to recover workers' compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Johnson v. Ford New Holland, ante* p. 182, 575 N.W.2d 392 (1998); *U S West Communications v. Taborski, supra*; *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997). A workers' compensation award cannot be based on possibility or speculation, and if an inference favorable to the claimant can be reached only on the basis thereof, then the claimant cannot recover. *Johnson v. Ford New Holland, supra*; *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

Like the majority on the review panel, we find it impossible to determine from the award whether the trial judge found that Owen met his burden of proving liability. Although the award contains a general finding that Owen sustained unspecified injuries to his hands and arms while in the course and scope of his employment, it also states that the issues which the trial judge could not resolve without resort to guess or speculation, which he therefore referred to an independent medical examiner, included "a sufficient learned and definite medical opinion as to the diagnosis and etiology of [Owen's] condition, together with an opinion as to whether or not that condition is related to [Owen's] employment . . . ." Because these opinions go to the issue of liability, they are not properly referable to an independent medical examiner under any circumstances. The fact that the trial judge considered these issues to be unresolved directly contradicts his general finding that Owen was "injured in the course and scope of his employment."

Neither party should prevail on the basis of an ambiguity. An order in a workers' compensation action must satisfy the requirements of Workers' Comp. Ct. R. of Proc. 11 (1995), which provides:

> All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and

explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which the judge relies. The decision shall provide the basis for a meaningful appellate review.

In *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996), we determined that an order of dismissal did not comply with this rule because it was not possible to determine whether the trial judge concluded that the plaintiff did not suffer from an occupational disease, or that the plaintiff suffered from an occupational disease but failed to establish that it arose out of and in the course of his employment. Finding that this deficiency in the order precluded meaningful appellate review, we vacated the judgment of dismissal and remanded the cause to the compensation court with directions to enter an order complying with the requirements of rule 11.

Without specifically invoking rule 11, the review panel majority made a similar determination in the present case, and we conclude that it was correct. The contradictory findings in the trial court's award preclude meaningful appellate review by either the review panel or a higher appellate court. Without an order clearly and unambiguously stating whether Owen met his burden of proving AHI and Aetna's liability on the basis of the evidence offered at trial and, if Owen did, the evidence which the trial judge relied upon in making such finding, we cannot determine whether the evidence was sufficient to support the finding or whether referral of any issues to an independent medical examiner is permissible as a matter of law. We therefore affirm the judgment of the review panel reversing the award, and we remand the cause to the trial judge with directions to enter an order based upon the evidence adduced at trial which complies with the requirements of rule 11.

AFFIRMED AND REMANDED WITH DIRECTIONS.