Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/08/2021 08:08 AM CDT

Allen Michael Lewis, appellee and
cross-appellant, v. MBC Construction
Co., Inc., and Carolina Casualty
Ins. Co., appellants and
cross-appellees.

___ N.W.2d ___

Filed July 16, 2021.    No. S-20-728.

1. **Workers' Compensation: Appeal and Error.** Under Neb. Rev. Stat.
   § 48-185 (Cum. Supp. 2020), a judgment, order, or award of the com-
   pensation court may be modified, reversed, or set aside only upon the
   grounds that (1) the compensation court acted without or in excess of
   its powers; (2) the judgment, order, or award was procured by fraud; (3)
   there is not sufficient competent evidence in the record to warrant the
   making of the order, judgment, or award; or (4) the findings of fact by
   the compensation court do not support the order or award.
2. ____: ____. On appellate review, the factual findings made by the trial
   judge of the Workers' Compensation Court have the effect of a jury ver-
   dict and will not be disturbed unless clearly wrong.

Appeal from the Workers' Compensation Court: Julie A.
Martin, Judge. Vacated and remanded with directions.

Daniel P. Lenaghan and Christine E. Westberg Dorn, of
Sodoro, Mooney & Lenaghan, L.L.C., for appellants.

Justin High and Erin N. Fox, of High & Younes, L.L.C., for
appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Per Curiam.

## NATURE OF CASE

Allen Michael Lewis was injured in the course of his employment with MBC Construction Co., which injury ultimately resulted in the amputation of his left leg. This case arises from Lewis' request for MBC Construction Co. and Carolina Casualty Ins. Co. (collectively MBC) to build accessible housing for him. The compensation court rejected Lewis' proposal for a four-bedroom, three-garage accessible house, but found certain accessibility features reasonable, necessary, and required due to the nature of Lewis' injury. It ordered MBC to modify an existing home or potentially build a unit to meet Lewis' accessibility requirements. MBC appeals, and Lewis cross-appeals. Because of ambiguity in its order, we conclude that the compensation court's order did not provide a meaningful basis for appellate review of its order regarding alternative accessible housing, and accordingly, we vacate the order and remand the cause with directions to enter an order in compliance with Workers' Comp. Ct. R. of Proc. 11 (2021). In view of our disposition of the appeal, we do not consider Lewis' cross-appeal.

## STATEMENT OF FACTS

On May 1, 2015, while Lewis was working for MBC Construction Co., an autopaving machine rolled on Lewis and crushed his leg. The leg was ultimately amputated above the knee. Neither party disputes that the amputation was a consequence of Lewis' original injury. Lewis now uses a wheelchair, scooter, and crutches. One of Lewis' treating physicians, Dr. Toby Free, testified to Lewis' challenges using a prosthesis, including edema, vascular damage, and other issues that affected the healing and fit at the amputation site.

Before and after the injury, Lewis lived with friends, with family, or in rental homes. The compensation court noted that most recently, he lived in a two-bedroom apartment with his sister.

Because of his restrictions, Lewis sought modification of his rental property from MBC and retained a physician assistant to evaluate his residence and vehicle for medically necessary modifications to accommodate his injury. Based on this report from the physician assistant, Dr. Free agreed that Lewis should have an accessible home. However, before an accessibility solution was implemented, Lewis was evicted from that rental property.

Lewis sought an estimate from a home builder for an accessible house with four bedrooms—one for himself and each of his children. The estimate was nearly $400,000. Lewis filed a motion to compel that would direct MBC to build the accessible house for his use. Lewis submitted evidence that a four-bedroom accessible house is difficult to find.

Dr. Free opined that "Lewis will need a fully handicap accessible home with a bathroom on the main floor. His home needs to be fully wheelchair accessible. He sometimes needs to use the wheelchair now and I expect he will need to use it more in the future as he ages." He opined that Lewis' "current living situation is untenable."

Although MBC claimed it was willing to make modifications to an existing home, it was not willing to purchase or construct a home for Lewis. It submitted an affidavit of Scott Vogt, the chief operating officer of a real estate company, which affidavit discussed homes in the Omaha, Nebraska, area meeting Lewis' requirements. Vogt analyzed the Omaha rental market and found at least 105 available rental units that would meet Dr. Free's requirements, ranging from $515 to $1,100 per month.

The compensation court found that Lewis' proposed four-bedroom, three-car-garage house was not reasonable and necessary. However, it also found that Lewis' injuries limited his ability to get around his home and take care of activities of daily living. It noted that the doors in his living quarters are not wide enough, the cabinets are not at the correct

height, and the ground presents tripping hazards documented in the exhibits.

At the time of the hearing, Lewis resided with family in their apartment. The court found that modifications to Lewis' home are necessary and that "[h]ad it not been for the accident and injury sustained while employed by MBC Construction [Co.], [Lewis] would not now need accessible housing." However, the compensation court explained that such modifications could not be completed on the apartment where Lewis was staying. It analyzed the case law and concluded, "[i]f modifications cannot be done to an existing property, the [court] reads the statute broadly . . . that would require defendants to obtain new living quarters for plaintiff that are accessible." It ordered MBC to find new living quarters within 45 days that are accessible.

The compensation court directed MBC to find "an existing home . . . to which modifications need to be made." As an alternative, it directed MBC to provide housing for Lewis by "either building or purchasing an accessible home for" him. The order provided that regardless of the eventuality, the potential housing should include at least 11 specified features to make it "accessible for [Lewis'] condition":

 1. At least three bedrooms;

 2. 36-inch wide doorways throughout the home and at all entry points and exit points;

 3. Either zero entry or a ramp for all entry and exit points into the structure;

 4. Zero entry for the shower;

 5. Reinforced shower bench and grab bars sufficient for his weight;

 6. Cut-outs under the sinks in his home so the wheelchair can fit underneath;

 7. 60 inches between the cabinets so he can move in and out while opening the cabinets;

 8. Reinforced grab bars around the toilets and in the laundry room for safety;

9. Nonslip flooring in the bathroom, laundry room, and kitchen;

10. An oversized commode; and

11. Electrical outlets in the garage, if there is one, for charging his scooter and in the bedroom for charging his prosthetic leg.

MBC appeals, and Lewis cross-appeals.

## ASSIGNMENTS OF ERROR

As its sole assignment of error, MBC claims that the compensation court erred when it directed MBC "to purchase real property for the benefit of . . . Lewis."

On cross-appeal, Lewis claims that the Workers' Compensation Court erred when it found his proposed new construction home was unreasonable and unnecessary. He also claims it was clearly wrong for the compensation court not to require garage space in its list of required features in its adaptive housing award. In view of our disposition of the appeal, we do not reach the cross-appeal.

## STANDARD OF REVIEW

[1] Under Neb. Rev. Stat. § 48-185 (Cum. Supp. 2020), a judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. See *Boring v. Zoetis LLC, ante* p. 270, 959 N.W.2d 795 (2021).

[2] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Melton v. City of Holdrege, ante* p. 385, 960 N.W.2d 298 (2021).

ANALYSIS

Both the appeal and cross-appeal taken in this case pertain to an employer's responsibility for an injured worker's home to be made accessible for the worker's work-related injuries. As an initial matter, we set forth our statutory and case law on Neb. Rev. Stat. § 48-120 (Cum. Supp. 2020) as it applies to housing accommodations. Section 48-120(1)(a) provides:

> The employer is liable for all reasonable medical, surgical, and hospital services, including plastic surgery or reconstructive surgery but not cosmetic surgery when the injury has caused disfigurement, appliances, supplies, prosthetic devices, and medicines as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment, and includes damage to or destruction of artificial members, dental appliances, teeth, hearing instruments, and eyeglasses, but, in the case of dental appliances, hearing instruments, or eyeglasses, only if such damage or destruction resulted from an accident which also caused personal injury entitling the employee to compensation therefor for disability or treatment, subject to the approval of and regulation by the Nebraska Workers' Compensation Court, not to exceed the regular charge made for such service in similar cases.

Nebraska courts have previously held that modifications to an injured employee's home can be medical expenses under the appliances or supplies categories of § 48-120(1)(a) when the modifications are "required by the nature of the injury" and if the modifications "relieve pain or promote and hasten the employee's restoration to health and employment." See, *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000); *Koterzina v. Copple Chevrolet*, 1 Neb. App. 1000, 510 N.W.2d 467 (1993). We note that the first sentence of § 48-120 provides a list of examples of reasonable services and items preceded by the word "including." We have previously

stated that the word "include," as used in a statute, connotes that the provided list of components is not exhaustive and that there are other items includable that are not specifically enumerated. *In re Interest of Seth C.*, 307 Neb. 862, 951 N.W.2d 135 (2020); See, also, Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012). As its sole assignment of error, MBC contends that the compensation court ordered it to purchase real property for the benefit of Lewis, which MBC understands as a directive that it build or purchase an accessible house for Lewis, and that this directive exceeded the compensation court's statutory authority under § 48-120. Lewis claims that an employer is potentially liable to provide an accessible home for the benefit of an injured worker. See, e.g., *Squeo v. Comfort Control Corp.*, 99 N.J. 588, 494 A.2d 313 (1985); *Peace River Elec. Corp. v. Choate*, 417 So. 2d 831 (Fla. App. 1982); *Arce v. Mountain Wood Forestry, Inc.*, No. COA09-490, 2010 WL 10962 (N.C. App. Jan. 5, 2010) (unpublished disposition listed in table at 201 N.C. App. 726 (2010)). As we read the compensation court's order, we agree it is plausible MBC would potentially be required to build or purchase real property thereunder. In this regard, the order states at one point that MBC "shall be responsible for either building or purchasing an accessible home for [Lewis]." However, the evidence relied on by the compensation court showed alternative housing arrangements that could meet Lewis' needs, and other portions of the order indicate that the compensation court believed MBC's obligation to Lewis could be met through a lease arrangement or by modifying rental property. The compensation court's failure to clearly direct the parties' future action precludes meaningful appellate review, and we vacate the order and remand the cause with directions to enter an order complying with the requirements of Rule 11 of the compensation court rules of procedure.

Rule 11 provides, in relevant part, that "[d]ecisions of the court shall provide the basis for a meaningful appellate review." Rule 11 ensures that compensation court orders are

sufficiently clear in addressing the parties' requested relief so that an appellate court can review the evidence relied upon by the trial judge in support of his or her findings. It requires "explicit findings of fact and conclusions of law so that all interested parties and a reviewing court can determine the legal and factual basis upon which a decision is made." *Torres v. Aulick Leasing*, 258 Neb. 859, 863, 606 N.W.2d 98, 102 (2000). It also requires a record that elucidates the factors contributing to the lower court's decision. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013).

In several cases where a compensation court made ambiguous or contradictory findings, we found that meaningful appellate review was precluded, even though the failure was not a jurisdictional defect. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005); *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998). The order before us is similarly ambiguous and contradictory. In its order, the compensation court acknowledged that MBC offered several alternatives which MBC was apparently willing to provide for Lewis. The court observed: "It did not seem to the Court that [MBC] so much objected to providing an accessible home, just that what [Lewis] proposed was not reasonable. . . . [MBC has] presented evidence that other alternatives are available that would meet [Lewis'] needs."

The order cited the affidavit of Vogt with respect to available properties in the Omaha area. The properties described therein included a range of options at many price points, included both rental homes and houses for sale, and included homes that were already accessible and homes needing modification to be accessible. The court continued:

> If an existing home is found for [Lewis] to which modifications need to be made, [MBC] must also see that plans are drawn up for any necessary modifications along with a timetable for completion of those modifications

and those plans must be presented to [Lewis] within this 45-day deadline. The Court realizes the deadline is tight, but there have been numerous delays already on this issue, and [Lewis] should not be the one to suffer for them.

However, the compensation court's order failed to clearly address whether and which of the housing options was reasonable and necessary, or the extent of MBC's specific economic obligations, such as insurance, taxes, and rental or mortgage payments, once appropriate housing for Lewis is identified. Compare, *Squeo v. Comfort Control Corp.*, 99 N.J. 588, 494 A.2d 313 (1985) (addressing construction costs, maintenance, capital repairs, insurance, and taxation); *Arce v. Mountain Wood Forestry, Inc.*, No. COA09-490, 2010 WL 10962 (N.C. App. Jan. 5, 2010) (unpublished disposition listed in table at 201 N.C. App. 726 (2010)) (dividing cost of housing between employer and worker).

We have previously reversed orders and remanded causes under rule 11 when the order of the compensation court was unclear. See, e.g., *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019); *Owen v. American Hydraulics, supra*; *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996). In a case where the order was ambiguous and contradictory, we said that "[n]either party should prevail on the basis of an ambiguity." *Owen v. American Hydraulics*, 254 Neb. at 695, 578 N.W.2d at 64. Compare *Lovelace v. City of Lincoln*, 283 Neb. 12, 809 N.W.2d 505 (2012) (finding order was not confusing and complied with rule 11).

In the instant case, the order is confusing and the undertakings of each party are unclear. We vacate the order of the compensation court and remand the cause for further proceedings.

On remand, the compensation court shall, inter alia, enter an order based on the existing record, clarifying which accessible alternative housing options should be pursued and in which order, and it should clarify in findings MBC's economic obligations under the Nebraska Workers' Compensation Act with respect to the housing ultimately obtained.

CONCLUSION

The compensation court erred when it issued a decision that did not comply with rule 11, and we vacate the order and remand the cause with directions to enter an order in compliance with rule 11 as described in our opinion above. In so doing, we express no opinion on an employer's potential liability, if any, to construct or purchase adaptive housing under § 48-120(1)(a), and we find it unnecessary to consider Lewis' cross-appeal.

Vacated and remanded with directions.

Stacy, J., concurring.

I agree with the majority's conclusion that the order of the Workers' Compensation Court is too ambiguous for meaningful appellate review and therefore must be vacated. I write separately to suggest that any expansion of our holding in *Miller v. E.M.C. Ins. Cos.*[1] presents issues of public policy for the Legislature.

In *Miller*, the injured worker used a wheelchair and we affirmed an order of the Workers' Compensation Court directing the employer's insurer to pay for the modifications needed to make the worker's home wheelchair accessible. We found that Neb. Rev. Stat. § 48-120(1) (Reissue 1993) provided the necessary authority for such an order, reasoning:

> [M]odifications to an injured employee's home [can] be considered medical expenses under the appliances or supplies categories if the modifications are "required by the nature of the injury," and if the modifications "relieve pain or promote and hasten the employees' restoration to health and employment."[2]

*Miller* found the first requirement was satisfied by evidence that doctors had recommended certain modifications to the employee's home to allow him to access and use the home

---

[1] *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000).

[2] *Id.* at 451, 610 N.W.2d at 412.

from his wheelchair. And the second requirement was satisfied by evidence that the employee's "pain [was] caused by the loss of independence to function and to enter and move about his own home."[3] The Nebraska Court of Appeals used similar reasoning in *Koterzina v. Copple Chevrolet*[4] to affirm a Workers' Compensation Court order directing the insurer to pay $18,376 in construction costs to modify the home of an injured worker who used a wheelchair.

In the 20-plus years since this court's decision in *Miller*, the relevant provisions of § 48-120(1) on which that holding was based have not been amended by the Legislature. And although the Legislature has defined some of the terms appearing in § 48-120,[5] it has not defined either "appliances" or "supplies" for purposes of that statute. Generally, when a statute has been judicially construed and that construction has not evoked an amendment, it is presumed the Legislature has acquiesced in the court's determination of the Legislature's intent.[6]

But the primary question raised by the parties in this appeal is not whether the employer or its insurer can be ordered to pay for modifications to Lewis' residence to make it accessible after his work-related injury. The parties agree that question was answered in the affirmative by *Miller*. Rather, the question here appears to be the extent of the employer's responsibility for modifications under *Miller* and *Koterzina* when the injured worker does not have housing that can be modified.

We do not reach that question in this appeal, because we are not able to discern what the trial court has ordered in that regard. Has the court ordered the employer or its insurer to purchase or custom build an entire home that is accessible?

---

[3] *Id.* at 452, 610 N.W.2d at 412.

[4] *Koterzina v. Copple Chevrolet*, 1 Neb. App. 1000, 510 N.W.2d 467 (1993).

[5] See Neb. Rev. Stat. § 48-120.01 (Reissue 2010) (defining terms "plastic surgery" and "reconstructive surgery" for purposes of § 48-120).

[6] *Rodriguez v. Lasting Hope Recovery Ctr.*, 308 Neb. 538, 955 N.W.2d 707 (2021).

If so, how are the associated costs to be allocated between the employer and the employee to ensure the employer pays for the necessary modifications under *Miller* and *Koterzina*, but not for the ordinary features of the home?

It is a familiar proposition of law that the Nebraska Workers' Compensation Court, as a statutorily created court, has only such authority as has been conferred upon it by statute, and its power cannot extend beyond that expressed in the statute.[7] I see nothing in the plain text of § 48-120, or in our current case law, that would support expanding the definition of medical "appliances" or "supplies" to include an entire home. Nor, in my opinion, are the courts the proper place to debate the various public policy concerns implicated by such an expansion.

So while I agree with the majority that the order of the workers' compensation court is too ambiguous and confusing for meaningful appellate review, I respectfully suggest that any expansion of the rule announced in *Miller* and *Koterzina* implicates important public policy questions about the compensability of accessible housing for injured workers and is something properly left to the Legislature.

Funke, J., joins in this concurrence.

---

[7] *Hofferber v. Hastings Utilities*, 282 Neb. 215, 803 N.W.2d 1 (2011).