IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

HOTZ V. NEBRASKA MED. CTR.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DEBORAH HOTZ, APPELLANT,
V.
NEBRASKA MEDICAL CENTER, THE EMPLOYER, AND
SAFETY FIRST INSURANCE COMPANY, ITS WORKERS'
COMPENSATION CARRIER, APPELLEES.

Filed May 21, 2013.    No. A-12-770.

Appeal from the Workers' Compensation Court: RONALD L. BROWN, Judge. Affirmed.

Angela L. Burmeister, of Berkshire & Burmeister, for appellant.

William J. Birkel and Noah M. Priluck, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Deborah Hotz (Deborah) appeals the decision of the Nebraska Workers' Compensation Court, which determined that she was not entitled to disability payments, medical benefits, or vocational rehabilitation for an injury she suffered after she slipped and fell while at work for the Nebraska Medical Center. On appeal, Deborah challenges the court's finding that any temporary or permanent disability she suffered was not the result of her slip and fall, but was instead the result of a chronic, preexisting condition that was unrelated to the fall. For the reasons set forth below, we affirm the decision of the Workers' Compensation Court.

## II. BACKGROUND

On June 28, 2009, Deborah was working as a laboratory technician for the Nebraska Medical Center. While at work, Deborah slipped on a wet floor and fell. As she fell, her body

twisted in a "weird way" and her head "snapped around." Deborah felt a sharp pain in her neck immediately after the fall, but continued to complete her work duties. However, approximately 1 hour after the fall, she left work to go to the emergency room because she was in a great deal of pain.

At the emergency room, doctors evaluated Deborah and took x rays of her neck. She was ultimately diagnosed as suffering from a cervical strain in her neck, also known as "whiplash." She was prescribed pain medication for the injury. Additionally, Deborah was informed that the x rays of her neck revealed that she had a chronic fracture in her neck that did not occur in the fall, but, rather, was likely from an "old trauma." Deborah was told to consult a neurosurgeon regarding the chronic fracture.

Deborah consulted Dr. George Greene, a neurosurgeon, about the fracture in her neck. After further testing, Dr. Greene informed Deborah that she suffered from an unstable, chronic neck fracture. He recommended that she undergo surgery to repair the fracture and informed her that due to the instability of the fracture, any additional, small trauma could cause paralysis or death. Dr. Greene informed Deborah that the fracture preexisted her slip and fall, but he was unable to pinpoint exactly when the fracture became unstable.

Deborah underwent surgery in August 2009 to repair the fracture. As a result of this surgery, she missed 6 weeks of work. Deborah underwent a second surgery in March 2012 to complete the repair of the fracture. As a result of this surgery, Deborah missed an additional 6 weeks of work.

On June 20, 2011, Deborah filed a petition in the Workers' Compensation Court, alleging that she had been injured in the scope and course of her employment with the Nebraska Medical Center. She further alleged that as a result of her work-related accident, she suffered from serious personal injuries and was entitled to temporary and permanent disability payments, medical benefits, and vocational rehabilitation.

In June 2012, a trial was held. At trial, Deborah and the Nebraska Medical Center and Safety First Insurance Company (Safety First), the Nebraska Medical Center's workers' compensation carrier, stipulated that Deborah's fall occurred within the course and scope of her employment. Deborah then testified regarding the accident and her resulting injuries. Specifically, she testified about the two surgeries she had to repair the unstable, chronic neck fracture and testified about her current condition.

In addition to Deborah's testimony, the parties offered numerous exhibits, including Deborah's medical records from various doctors and deposition testimony from Dr. Greene. While we have reviewed this voluminous evidence in its entirety, we do not detail such evidence here. Rather, we simply note that there was some conflicting evidence presented concerning the exact cause of Deborah's unstable, chronic neck fracture. We will set forth the specific facts as presented at the trial as necessary in our analysis below.

After the trial, the compensation court entered a detailed award. In the award, the court found:

> On June 28, 2009, [Deborah] was in the employ of the [Nebraska Medical Center] as a laboratory administrator, and while so employed and on said date and while engaged in the duties of her employment she suffered injuries to her neck as a result of an accident

arising out of and in the course of her employment by the [Nebraska Medical Center] when [she] slipped and fell on a wet floor.

The court went on to note:

> The primary dispute between the parties was the nature and extent of [Deborah's] injury, as [the Nebraska Medical Center and Safety First] admitted [Deborah] fell at work on June 28, 2009. The Court has reviewed the extensive exhibits submitted by the parties but believes the dispositive evidence is the deposition of Dr. . . . Greene, [Deborah's] neurosurgeon . . . .

The court then cited extensively from Dr. Greene's deposition testimony.

Ultimately, the compensation court concluded:

> [Deborah] suffered an accidental fall June 28, 2009, which caused a cervical sprain/strain but there was no sufficient evidence [the sprain/strain] caused temporary or permanent disability. Her temporary total disability and permanent disability was the result of the chronic unstable [neck] fracture which was unrelated to the accidental fall. . . .
>
> . . . .
>
> Inasmuch as there was no evidence of permanent impairment or permanent physical restrictions causally related to the cervical sprain, [Deborah] is not entitled to vocational rehabilitation services.

The court also found that there was no evidence of any unpaid medical expenses related to Deborah's temporary cervical sprain/strain. Accordingly, the compensation court denied Deborah any benefits related to the June 2009 slip and fall and her resulting injuries.

Deborah appeals from the award of the compensation court here.

## III. ASSIGNMENTS OF ERROR

Deborah alleges, restated and consolidated, that the Workers' Compensation Court erred by failing to find that she is entitled to compensation for the injury she sustained in June 2009.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013).

On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.*

### 2. COMPENSABLE INJURY

Deborah alleges that she presented sufficient evidence to prove that the injury she sustained on June 28, 2009, entitled her to compensation under the Nebraska Workers' Compensation Act. She alleges that the evidence she presented at the trial demonstrated that

there was a clear causal connection between the injury she suffered as a result of the slip and fall and her resulting disability and treatment, particularly the two neck surgeries. Specifically, Deborah alleges in her brief that the evidence presented at the trial revealed that her June 2009 fall caused the fracture in her neck to become unstable and, as such, that the fall necessitated the two neck surgeries.

Under the Nebraska Workers' Compensation Act, a claimant is entitled to an award for a work-related injury and disability if the claimant shows, by a preponderance of the evidence, that he or she sustained an injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment. *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992). Moreover, to recover workers' compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998).

Here, the Nebraska Medical Center and Safety First concede that Deborah's June 2009 slip and fall occurred in the course and scope of her employment. As such, the only issue presented at trial and in this appeal is the extent of Deborah's injuries and disability as a result of the fall. The exact question presented is whether the evidence established that the June 2009 fall caused or aggravated in any way the unstable, chronic fracture in Deborah's neck.

When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. See *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013). In this case, the Nebraska Medical Center and Safety First--the employer and its workers' compensation carrier--were the successful parties. Thus, we view the evidence in their favor and give them the benefit of all favorable inferences.

When we consider the evidence presented at trial in the light most favorable to the Nebraska Medical Center and Safety First, we conclude that there is sufficient evidence to demonstrate that Deborah's neck fracture and the resulting disability and treatment, including the two neck surgeries, were not causally related to the injuries Deborah sustained when she fell on June 28, 2009.

Dr. Greene, the neurosurgeon who performed Deborah's neck surgeries, testified in his deposition that Deborah's neck fracture was chronic, meaning the fracture was not new and was not caused by Deborah's fall. Dr. Greene explained that he had no way of knowing exactly when the fracture occurred, but he believed, based on the medical history provided to him by Deborah, that the fracture likely occurred when Deborah was in an automobile accident in 1989. He indicated that it was entirely possible to have a neck fracture for 19 years without experiencing any further spinal cord injury. Dr. Greene also testified that although he could not state exactly when Deborah's neck fracture became unstable, it was "most likely" unstable prior to her June 2009 fall. He stated that he believed the fall caused only a muscle or soft tissue injury which "unmasked" the preexisting neck fracture. Finally, he indicated that Deborah's neck surgeries were necessitated by the neck fracture and not by the neck pain she suffered after the fall.

Other evidence presented at the trial also demonstrated that Deborah's chronic, unstable neck fracture preexisted her June 2009 fall. Medical records from Deborah's visit to the

emergency room immediately after her fall revealed that, as a result of the fall, Deborah suffered from a cervical strain, an injury commonly known as "whiplash." The medical records also revealed that Deborah had a chronic neck fracture. She was informed that this fracture was not a result of the fall because it was an old injury. Additionally, there was medical evidence that Deborah had suffered from intermittent neck pain since the time of her automobile accident in 1989. Deborah periodically sought medical attention for this pain in the years preceding her workplace fall.

Taken as a whole, we find this evidence sufficient to establish that the injuries Deborah sustained in the June 2009 workplace fall bore no relationship to the chronic, unstable neck fracture she suffered. This evidence demonstrates that the neck fracture preexisted the fall and that it was this fracture, and not the minor injury she suffered in the fall, that necessitated two neck surgeries and which resulted in permanent impairment.

We recognize that there is some conflicting evidence in the record concerning whether Deborah's fall aggravated the neck fracture or caused the neck fracture to become unstable. In fact, we recognize that in his deposition, Dr. Greene provided somewhat conflicting or ambiguous information about the specific cause of the chronic, unstable neck fracture. However, an expert's opinion must be examined in the context of the expert's entire testimony. See *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992). And, upon our review of Dr. Greene's entire deposition testimony, we cannot say that the compensation court erred in finding that Dr. Greene's testimony ultimately demonstrated that the neck fracture was unrelated to Deborah's June 2009 fall.

Given the evidence in the record and considering our standard of review, we find no merit to Deborah's assignment of error. There was sufficient evidence presented at trial to demonstrate that Deborah's workplace fall on June 28, 2009, caused only a minor cervical sprain to her neck and that this injury did not cause any temporary or permanent disability. There was also sufficient evidence to demonstrate that the fall did not cause or aggravate the unstable, chronic fracture in Deborah's neck. Accordingly, the compensation court did not err in denying Deborah any disability payments, medical benefits, or vocational rehabilitation. We affirm the court's award in its entirety.

## V. CONCLUSION

Because there was sufficient evidence to support the compensation court's decision to deny Deborah any benefits as a result of her June 2009 workplace fall, we affirm.

AFFIRMED.