IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

TUNINK V. CONTINENTAL FIRE SPRINKLER CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ESTATE OF GREG TUNINK, DECEASED, BY AND THROUGH ITS PERSONAL
REPRESENTATIVE, KATELYN TUNINK, APPELLEE,
V.
CONTINENTAL FIRE SPRINKLER CO., DOING BUSINESS AS CONTINENTAL ALARM & DETECTION,
EMPLOYER, AND SELF-INSURED C/O SEDGWICK, INSURANCE CARRIER, APPELLANTS.

Filed February 6, 2024.    No. A-23-457.

Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Affirmed in part, and in part reversed and remanded with directions.

Jennifer S. Caswell, of Caswell, Panko & Westerhold, L.L.C., for appellants.

Laura L. Pattermann and Thomp. J. Pattermann, of Gallner & Pattermann, P.C., for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Continental Fire Sprinkler Company ("Continental Fire") appeals from an award entered by the Nebraska Workers' Compensation Court finding that Greg Tunink had suffered a work-related injury to his right foot and was entitled to disability benefits. On appeal, Continental Fire argues that the compensation court erred in finding that Tunink's work-related accident caused permanent impairment to his right foot and, thus, was compensable. Continental Fire also argues that the compensation court erred in ordering it to pay for Tunink's medication for depression and anxiety without specifically finding such conditions were caused or exacerbated by the work-related accident. Finally, Continental Fire challenges the compensation court's finding that Tunink is entitled to vocational rehabilitation services.

- 1 -

Upon our review, we cannot say that the compensation court's award of disability benefits to Tunink for the injury sustained to his right foot was clearly wrong. As such, we affirm that portion of the court's award. However, because of ambiguity in the compensation court's award as to the cause of Tunink's depression and anxiety, we vacate that portion of the order awarding Tunink payment for depression and anxiety medication, and remand the cause with directions to enter an order in compliance with Workers' Comp. Ct. R. of Proc. 11 (2021) (Rule 11). We also conclude that Continental Fire's allegations regarding the award of vocational rehabilitation services are moot, because Tunink died prior to receiving such services.

BACKGROUND

On May 21, 2019, Tunink was employed by Continental Fire as a fire alarm technician. On that day, Tunink was assigned to test all of the fire alarms at a local nursing college campus. When he was walking into one of the buildings on the campus, he pushed open a heavy glass door to walk through. However, the door began to slam shut before he was all the way through it, hitting the top and side of his right foot. Tunink's right foot immediately began to swell and he telephoned his supervisor to determine what he should do.

When his boss arrived at the campus, he informed Tunink that he should finish out his work day, but restrict the amount of walking he did. Tunink continued to work in the days immediately after the accident, using pain medication and icing his foot at the end of each day. Approximately one week after the accident, Tunink informed his supervisor that he needed to see a doctor about his right foot. On May 29, 2019, Tunink and his supervisor attended an appointment with a doctor at WorkFit. At the appointment, Tunink rated his pain as a two out of ten. An x-ray was performed and revealed that there were no broken bones in the foot. Tunink was diagnosed as suffering from a sprain of his right ankle and his foot. He was told he could continue working without restrictions.

Tunink returned to WorkFit for a followup appointment on June 5, 2019. At this appointment, Tunink rated his pain a one out of ten. According to medical records, Tunink informed the doctor that while there was still some swelling and pain in his right foot, he felt it was improving. In the records, the treating doctor noted that Tunink's right foot was "not 100%, but getting close." The doctor indicated that Tunink should feel much better in one to two more weeks. Tunink was informed he could continue working without restrictions.

On July 15, 2019, almost 2 months after the work-related accident, Tunink attended an appointment with his primary care physician, Dr. Heather Obregon. At this appointment, Tunink reported that he had been having pain in his left great toe for approximately 1 week. He did not mention the injury to his right foot at this appointment. Obregon referred Tunink to Dr. Shane Schutt, a foot and ankle surgeon, for further evaluation of the left foot.

Tunink saw Schutt on July 17, 2019, regarding the pain in his left foot which, according to Tunink, "came on spontaneously" a week prior to the appointment. Notably, prior to the appointment with Schutt, Tunink filled out paperwork in which he indicated that his complaints were not related to a workers' compensation case. Tunink did inform Schutt about his May 21, 2019, work-related accident, but indicated that his injury from that accident had "gotten better" and that his current pain "feel[s] a little bit different." Ultimately, Schutt was unable to provide a diagnosis for Tunink's left foot pain. Schutt indicated that Tunink was prediabetic and suffering

from neuropathy in the foot, which caused diminished sensation, and Schutt was unable to identify exactly where Tunink was hurting.

In August 2019, Tunink returned to Obregon for a well adult examination. At this time, Tunink reported he still had some pain and swelling in his left foot. Obregon spoke with Tunink about his "morbid obesity" playing a role in regard to his foot pain and his other medical issues. She counseled him regarding losing weight. Obregon also renewed Tunink's prescription for medication associated with his mild depression.

A few weeks later, on September 12, 2019, Tunink emailed Obregon and indicated that the swelling and pain in his left foot was not improving. Obregon referred Tunink to Dr. Kent DiNucci, a podiatrist. Tunink saw DiNucci for the first time on September 19. At the appointment, Tunink complained of pain in his left foot and numbness in the toes on both feet. He denied suffering any specific traumatic injury which would explain his symptoms and did not mention the May 2019 work-related accident. In fact, DiNucci noted in his records, "The right foot was not an issue and no pain." DiNucci ultimately diagnosed Tunink as suffering from multiple stress fractures in the left foot and a possible tear of one of his tendons. DiNucci explained:

> Basically, the bones are inflamed and his foot is swollen because they can't heal as fast as they are being broken down by the activity and weight of the patient. Therefore, we need to off-load the foot by using a camwalker and an arch support to allow the bones to have less stress and heal appropriately.

DiNucci also ordered an MRI and counseled Tunink on losing weight.

On October 1, 2019, Tunink sent DiNucci a message asking him to provide certain information to the human resources department at Continental Fire. First, Tunink asked if DiNucci could provide an opinion that the injury to his left foot was "possibly related to putting extra stress on left foot when right foot was injured." He also asked if DiNucci could approve of him returning to work in some capacity so that he could generate some income. DiNucci authored an "Excuse Slip" which directed that Tunink "is improving and can work full-time as long as he has camwalker on his left foot/leg for next 4 wks." DiNucci did not provide any opinion about the cause of the injury to Tunink's left foot.

Tunink messaged Obregon on November 5, 2019, asking for medication for his anxiety: "Can you call me in something for my high anxiety. I really need to stop using alcohol for my anxiety. I think my alcohol use is partly adding to my problems with my feet."

Tunink visited an urgent care facility on November 9, 2019, again complaining of left great toe pain. He was diagnosed as suffering from a diabetic foot ulcer. The treating physician opined that the neuropathy in Tunink's foot was likely contributing to the development of such sores. Tunink followed up with Obregon on November 14. He reported that his whole left leg was now swollen and red and felt hot to the touch. Obregon referred Tunink to Dr. Amir Sasan Gholami, an infectious disease specialist.

Tunink saw Gholami on November 18, 2019. At that time, he complained of "left great toe ulcer, left foot swelling, edema and erythema." He told Gholami that the issue had been present since June. Gholami diagnosed him as suffering from cellulitis of the left foot, left great toe, and left leg and from a diabetic ulcer of the left foot. Tunink was counseled to take prescribed antibiotics, keep pressure off of his foot, and work on losing weight. When Tunink returned to see

Gholami on November 25, Gholami noted that the antibiotics appeared to be helping to improve the condition of Tunink's left foot. Gholami discussed with Tunink the importance of keeping pressure off of his left foot, controlling his diabetes, and losing weight.

Also on November 25, 2019, Tunink saw Dr. John Harris, his new primary care physician. At this appointment, Tunink continued to complain of problems with his left foot. Harris referred Tunink to Dr. Scott Nelson, a foot and ankle specialist. In Harris' notes from the November 25 appointment, he indicated that Tunink's "[d]epression screen is negative and [Tunink's depression is] currently treated with medication and/or therapy."

Tunink saw Nelson for the first time on December 9, 2019. At that time, Tunink described the issues with his left foot. However, he did mention the May 2019 work-related accident and inquired whether the injury to his right foot from that accident caused the injuries and issues with his left foot. Nelson diagnosed Tunink as suffering from Charcot's joint of the left foot and from a left foot ulcer. Nelson indicated that such conditions were secondary to neuropathy and diabetes. Shortly after this appointment with Nelson, Tunink returned to Harris to inquire about obtaining medication for his diabetic condition. At this appointment, Tunink denied struggling with his depression or anxiety.

In 2020, Tunink continued to seek treatment with Nelson. On March 7, he presented with an ulcer on his left great toe and a bunion on his right foot. An x-ray of Tunink's right foot indicated "hallux valgus deformity with digital contracture noted to the great toe as well as the lesser digits midfoot showed no evidence of a general changes or soft tissue swelling and no evidence of collapse noted to the midfoot." When Tunink returned to Nelson in May, he only complained of pain in his left foot. However, when he returned in June, he complained of an ulcer located on the bunion on his right foot. At this appointment, Nelson also diagnosed Tunink as suffering from cellulitis of his right lower extremity. Nelson opined that Tunink's "shoes are the source of irritation to the bunion site." He prescribed a postoperative shoe for his right foot and indicated that Tunink required work restrictions, as he was still working at Continental Fire and on his feet a great deal. After this appointment, Tunink took a leave of absence from his employment with Continental Fire.

Tunink returned to see Nelson in July 2020. At this appointment, Tunink reported that the bunion on his right foot was getting worse. Tunink informed Nelson that he believed that the deformity to his right foot was related to his May 2019 work accident. Tunink explained that several months after the injury, he started developing bunion deformity and "has had progression of deformity since then and this has been progressive since his original injury despite multiple conservative efforts." Upon his examination, Nelson found that on the right foot, "there has been a propagation of injury and initiation of charcot arthropathy." On August 12, 2020, Nelson further explained his diagnosis as "Charcot foot right forefoot due to diabetes mellitus." In September, Nelson recommended that Tunink have the toes on his right foot amputated due to his persistent and worsening deformity. Nelson indicated that Tunink should obtain a second opinion.

Tunink sought such a second opinion from Dr. Scott McMullen. Tunink's first appointment with McMullen was on September 10, 2020. At this appointment, Tunink described the problems with both his left and his right foot. Tunink attributed the problems with both feet to his May 2019 work-related accident. McMullen ultimately diagnosed Tunink as suffering from deformities to both feet. He did not believe that amputation of the right toes was necessary. Instead, McMullen

recommended reconstructive surgery of the right foot, subject to Tunink's ability to quit smoking prior to any surgery taking place. McMullen advised Tunink that he could return to work in a light duty or sedentary position with minimal standing or walking requirements. McMullen opined that Tunink's "current findings are related to his previous history of trauma as reported."

McMullen performed reconstructive surgery on Tunink's right foot on December 9, 2020. Two months after the surgery, in February 2021, McMullen indicated that Tunink could return to work, but with only minimal standing and walking. Shortly thereafter, Continental Fire sent Tunink notice that they were terminating his employment because he had been unable to return to his duties after his medical leave of absence. On March 29, McMullen opined that Tunink was best situated for a sedentary job with no standing or walking required.

On March 8, 2021, Tunink filed a petition in the compensation court alleging that he was injured on May 21, 2019, in the course and scope of his employment with Continental Fire and that, as a result, he was entitled to compensation. Specifically, Tunink alleged that as a result of the work-related accident, he suffered injuries to his right foot and toes, left foot and toes, and nerves in his right lower extremity. Tunink also alleged that the accident worsened his anxiety and depression. Tunink asked that he be awarded indemnity benefits, ongoing medical benefits, future medical benefits, compensation for his loss of earning capacity, and vocational rehabilitation benefits. In Continental Fire's answer, it admitted that Tunink had a work-related accident in May 2019, but denied that he suffered from any lingering disability as a result of the accident. Continental Fire asserted that any disability that Tunink currently suffered from was not the result of the work accident.

Trial was held on Tunink's petition on August 11, 2022. Prior to any testimony being heard, the parties offered a joint stipulation to the compensation court to narrow the issues being presented. As is relevant to this appeal, the parties stipulated:

[Tunink] had an accident arising out of and in the course of his employment with [Continental Fire] on May 21, 2019 and sustained an injury to his right foot. However, the parties dispute whether the injury to [Tunink]'s right foot is permanent, whether [Tunink] sustained an injury to his left foot and whether [Tunink] sustained a mental injury as a result of said accident.

During the trial, both Tunink and his wife testified. In addition to testifying about the recent medical treatment he had received for his right and left feet, Tunink also testified about his work history and his current condition. At the time of the trial, Tunink was 49 years old. He was a high school graduate who possessed an associate's degree in tool and die manufacturing and who had attended trade school to become a licensed journeyman electrician. His work history included relatively physically demanding jobs and almost no experience with sedentary work. Most recently, he was employed as an electrician servicing fire alarm systems. Such work required a lot of walking, kneeling, crawling, climbing, and standing. Tunink indicated he was currently unable to perform the tasks required of him as an electrician.

When Tunink was hired at Continental Fire as a fire alarm technician, he was 6 feet, 6 inches tall and weighed 450 pounds. He remained approximately that size at the time of trial. Tunink testified that at the time of being hired, he had never had any health problems due to his

size. However, just prior to his work-related accident in 2019, he was diagnosed as prediabetic. By that time, he was also beginning to suffer from neuropathy in the tips of his toes on both feet.

Tunink testified that as a result of the work-related accident and resulting injuries he was suffering from extreme anxiety and depression at the time of the trial. He admitted that he was diagnosed with depression as a sophomore in high school and that he had been prescribed a low-dose of anti-depressant medication ever since. He explained that prior to the accident, his depression had been controlled by this medication. Tunink denied ever suffering from anxiety prior to the accident. Tunink testified that after the accident, his depression increased and he developed anxiety. He described himself as constantly stressed and irritable and discussed how he was worried about his future. Prior to the accident, Tunink had planned on working as an electrician until he retired. He felt secure in his employment prospects. After the accident, he felt worthless and helpless, being unable to perform basic tasks without assistance. On August 8, 2022, just three days prior to the trial, Tunink returned to Harris with complaints of increased depression symptoms and panic attacks.

Tunink's wife of just over a year, Julie, testified that she has been his primary caregiver for his foot injuries. She described how Tunink has been consistently in pain since the May 2019 work-related accident: first with his right foot, then with his left foot, and now with the deformities in his right foot. Tunink has been unable to help around the house, including being unable to mow the yard, go to the grocery store, or transport himself. Julie testified that Tunink was extremely interested in vocational rehabilitation programming because he truly wanted to work again. She explained that she and Tunink separated for a few months leading up to the trial as a result of Tunink's deteriorating mental health.

As a part of his evidence, Tunink offered medical opinions regarding the cause of his foot problems from McMullen, Dr. Thomas Atteberry, who provided a medical evaluation of Tunink in February 2022, and Dr. Rashmi Joshi, who performed an independent records review. Tunink also offered evidence regarding his current mental health status.

In a letter authored by McMullen on March 15, 2021, he opined: "The structural changes to [Tunink's] right foot, I believe, are secondary to that work related injury which occurred in May of 2019. . . . This statement is based upon a reasonable degree of medical certainty." In a followup letter dated September 7, 2021, McMullen reiterated his opinion that the cause of Tunink's right foot problems was the work-related accident. He went on to provide the following prognosis for that foot:

> I believe that Mr. Tunink's prognosis is fair to good. With proper care of his right foot including utilizing specialty shoes and custom inlays, I would anticipate that he will continue to have a stable foot. Utilizing the 5th Edition and the American Association Guides to the Evaluation of Partial Permanent Impairment, taking into consideration the collapse and posture of his right midfoot as well as his forefoot deformity which occurred . . . his partial permanent impairment rating of the right foot is 21%.

Notably, McMullen did not provide any opinion regarding the cause of the injuries to Tunink's left foot.

Atteberry, an orthopedic specialist, provided a medical examination of Tunink at the request of his attorneys on February 25, 2022. After this examination, Atteberry opined that

Tunink's "injury to his right foot and subsequent need for surgery on his right foot is a direct result of his work injury on 05/21/2019." Atteberry went on to opine,

> I think [Tunink]'s left foot pain and current great toe issues are also related to his work injury of 05/21/2019. In that his antalgic gait and attempts to protect his right foot led to him being placed into a Cam boot on his left foot, which eventually led to the ulcer formation on his left great toe.

Atteberry rated Tunink's permanent partial impairment at 20 percent of the right foot and 3 percent of the left foot. Atteberry recommended that Tunink return to work in a job that would allow him to be sedentary.

Joshi, a board certified internal medicine specialist, performed a review of Tunink's medical records for purposes of Tunink's application for Social Security disability benefits. Contrary to Atteberry's opinion, Joshi opined that the Charcot foot and recurrent right foot ulcerations were the result of diabetic neuropathy, and not the May 2019 work accident. Joshi did not change this opinion, even after speaking with McMullen about Tunink's condition:

> Per Dr. McMullen, he first saw [Tunink] in September 2020. [Tunink] told him that he had a foot injury at work in May 2019. However, Dr. McMullen has not seen any records related to the injuries by any other provider and does not know what, if any, treatment [Tunink] had after the reported work injury in 2019. Therefore the additional information does not change the determination.

On May 25, 2022, Tunink was given a psychological evaluation as part of his application to receive social security disability benefits. A report authored by a licensed psychologist, Elizabeth Morell, PhD, concluded:

> Prognosis is guarded for [Tunink] from a mental health point of view. He experiences depression and anxiety. He continues to take medication and participate in therapy. He appears to struggle with ongoing medical concerns, and this exacerbates the underlying mental health. His medical concerns would be better evaluated by a medical doctor.

Notably, Morell's opinion appears to have depended exclusively on Tunink's self-report. Harris did, however, concur with Morell's opinion that Tunink's current depression is triggered by the fact that he is physically incapable of performing the duties of a fire alarm technician.

As a part of Continental Fire's evidence, it offered a report from Dr. Dean Wampler, who performed a medical examination of Tunink in September 2020. Wampler opined that Tunink's problems with his feet were not caused by the May 2019 work-related accident:

> The WorkFit notes identify an injury not nearly as severe as reported by Mr. Tunink during my interview. His pains were 1 to 2 out of 10, and most of his swelling and discomfort was over the lateral malleoli of his ankle, rather than any significant damage to his forefoot that is now so deteriorated.

> For these reasons I can only establish that Mr. Tunink had a hindfoot contusion or mild crush injury as a result of the 05/21/2019 accident. All new pathology and treatment beginning in July or August of 2019 is progression of right pathology due to neuropathy or neuropathic ulceration of his left foot.

Charcot arthropathy is caused by loss of sensation and accumulation of microtrauma from activities of daily living. Because there is lack of joint sensation, the patient is unaware that damage is occurring and the condition progresses unnoticed. Charcot joint is a condition only related to peripheral neuropathy established in Mr. Tunink's case by untreated mild diabetes. Mr. Tunink's bunion deformity in his right foot is also a part of his Charcot deformity.

Mr. Tunink's left foot problems are classic diabetic ulceration and callus overloading. His left ankle MRI scan demonstrated stress in his bones, which means he will soon develop Charcot deformities in his left foot.

Wampler went on to opine that after Tunink was discharged from WorkFit in June 2019, no further treatment for the injury he suffered on May 21, 2019, was necessary.

After the close of trial, on May 25, 2023, the compensation court issued its findings in a written order. The court found that Tunink "injured his right foot at work on May 21, 2019, which got worse due to microtrauma from walking which ultimately required surgery by Dr. McMullen." The court agreed with McMullen's opinion that Tunink has a 21 percent loss of use of his right foot. It awarded Tunink temporary benefits of $855 per week from June 17, 2020, to September 7, 2021, which the court found was the date on which Tunink reached maximum medical improvement with regard to his right foot. The court awarded Tunink permanent benefits for 31.5 weeks at a rate of $855 per week.

The compensation court found that the injuries to Tunink's left foot were not related to the May 2019 work accident. However, the court did note that Tunink "has depression and anxiety which will improve once he finds work after vocational rehabilitation which will be either training or job placement, but most likely formal retraining due to his high average weekly wage." The court ordered Continental Fire to pay for all of Tunink's past and future medical expenses related to his right foot injury and resulting surgery in addition to "medication for depression and anxiety." The court found that Tunink is entitled to vocational rehabilitation services.

Continental Fire filed their notice of appeal on June 15, 2023. A few weeks later, on August 2, 2023, Tunink died by suicide. The personal representative of his estate filed a motion to revive the action and to substitute the estate as the appellee in this matter. We granted such motions. However, we denied the estate's motion to remand the matter back to the compensation court to determine whether, in addition to the benefits already awarded, the estate is entitled to any death benefits from Continental Fire. In this appeal, we review only the issues raised in connection with the compensation court's May 2023 order.

ASSIGNMENTS OF ERROR

On appeal, Continental Fire assigns four errors, which we consolidate and renumber for our review. First, Continental Fire argues that the compensation court erred in finding that Tunink's work-related accident caused permanent impairment to his right foot and, thus, was compensable. Second, it argues that the court's decision to award Tunink with payment for his depression and anxiety medication was not well reasoned pursuant to Rule 11 and was not supported by sufficient evidence. Finally, Continental Fire challenges the court's finding that Tunink was entitled to vocational rehabilitation services.

- 8 -

## STANDARD OF REVIEW

Under Neb. Rev. Stat. § 48-185 (Reissue 2021), a judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. See *Lewis v. MBC Constr. Co.*, 309 Neb. 726, 962 N.W.2d 359 (2021).

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.*

## ANALYSIS

*Injury to Right Foot.*

On appeal, Continental Fire asserts that the compensation court erred in finding that Tunink's May 21, 2019, work-related accident caused permanent impairment to his right foot, necessitating a disability award. Essentially, Continental Fire asserts that the evidence presented at trial revealed that Tunink hurt his foot in the work-related accident, it healed, and he later developed a separate and distinct condition in his right foot. Upon our review, we find sufficient evidence in the record to support the compensation court's finding that Tunink's May 21, 2019, work-related accident caused permanent impairment to his right foot.

The record contains conflicting medical evidence regarding the cause of Tunink's deformity in his right foot which necessitated him to have reconstructive surgery and which caused a permanent impairment to his right foot. McMullen, Tunink's treating surgeon, opined to a reasonable degree of medical certainty that Tunink's deformity in his right foot was "secondary to that work related injury which occurred in May of 2019." Atteberry, who performed a medical examination of Tunink at the request of his attorneys concurred with McMullen's opinion of causation: "[The] injury to his right foot and subsequent need for surgery on his right foot is a direct result of his work injury on 05/21/2019." Contrary to these opinions, Wampler, who performed a medical examination of Tunink at the request of Continental Fire's attorneys, and Joshi, who performed a review of Tunink's medical records, both opined to a reasonable degree of medical certainty that Tunink's right foot deformity and resulting surgery were unrelated to his May 2019 work accident. Wampler believed that Tunink had fully recovered from any injury suffered in the accident by June and that the right foot deformity which began months after the accident, was related to his diabetic neuropathy. Joshi also believed that Tunink's right foot deformity was caused by diabetic neuropathy, rather than any lingering injury from the work accident.

In its award, the compensation court implicitly found that the opinions of McMullen and Atteberry were more credible than the opinions of Wampler and Joshi. The court stated, "The court finds [Tunink] injured his right foot at work on May 21, 2019, which got worse due to microtrauma from walking which ultimately required surgery by Dr. McMullen. [Tunink] has a 21 percent loss of use of his right foot."

The compensation court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. *Yost v. Davita, Inc.*, 23 Neb. App. 482, 873 N.W.2d 435 (2015). When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Id.* The compensation court chose to find the opinions of McMullen and Atteberry credible, and we do not reweigh that decision on appeal.

Continental Fire asserts that even if the compensation court properly considered the opinions of McMullen and Atteberry in finding that Tunink's May 21, 2019, work-related accident caused permanent impairment to his right foot, the court erred in determining that walking had exacerbated Tunink's condition. Continental Fire contends, "injuries due to walking are not compensable under the [Workers' Compensation] Act." Brief for appellant at 21. We find Continental Fire's contention to be without merit. This is not a situation where Tunink injured his right foot while merely walking at work, as in *Maradiaga v. Specialty Finishing*, 24 Neb. App. 199, 884 N.W.2d 153 (2016), the case cited by Continental Fire in support of its contention. In *Maradiaga*, this court found that an employee's injury did not arise out of her employment when the employee fractured her ankle while getting out of her car in her employer's parking lot. Therein, we explained that "nonstrenuous walking is the 'epitome of a nonemployment risk.'" *Id.* at 212, 884 N.W.2d at 162. We went on to find that no evidence was adduced in the case indicating "that the everyday activity of exiting a car, while carrying nothing heavier than a small lunchbox" was a risk associated with her employment. *Id.*

In this case, the evidence presented at trial indicated that Tunink injured his right foot in the course and scope of his employment with Continental Fire when he was actively engaged in testing a fire alarm system, all of which was admitted in Continental Fire's answer. According to expert medical testimony offered at the trial by Tunink, the injury suffered by Tunink in his work-related accident was worsened by him continuing to work and to walk extensively. Such evidence does not indicate that Tunink's injury to his right foot resulted from an "everyday activity" or from any "nonemployment risk." See *id.* Rather, such evidence supports Tunink's contention that he suffered from an initial work-related injury which was exacerbated by the requirements of his subsequent work.

Taking into account the evidence presented at the trial and our standard of review, we cannot say the compensation court was clearly wrong in determining that Tunink's May 21, 2019, work-related accident caused permanent impairment to his right foot.

*Depression and Anxiety.*

At the close of the presentation of evidence at trial, the compensation court questioned in open court whether there was any medical testimony that tied Tunink's depression and anxiety to the work-related accident. The court explained, "Common sense tells me that he's probably depressed and anxious because he can't do what he used to do, but I usually have a doc say that." The court indicated its belief that Tunink did not present sufficient, competent evidence to support an award for his mental health problems: "I got nothing to hang my hat on." However, in the compensation court's award entered in May 2023, the court made a finding that Tunink "has depression and anxiety which will improve once he finds work after vocational rehabilitation which will be either training or job placement, but most likely formal retraining due to his high

average weekly wage." The court then awarded Tunink payment for his medication for his depression and anxiety.

On appeal, Continental Fire challenges the compensation court's determination that Tunink be awarded payment for "medication for depression and anxiety" without first explicitly finding that Tunink's depression and anxiety were caused by the May 21, 2019, work-related accident. Continental Fire argues both that the compensation court's decision violates Rule 11 of the Nebraska Compensation Court's rules of procedure and that it is not supported by sufficient evidence. For the reasons set forth herein, we agree with Continental Fire that the compensation court did not provide a reasoned decision containing facts and conclusions of law pursuant to Rule 11. Accordingly, we reverse and remand this issue for further decision by the compensation court.

Rule 11 provides, in relevant part, that "[d]ecisions of the court shall provide the basis for a meaningful appellate review." Rule 11 ensures that compensation court orders are sufficiently clear in addressing the parties' requested relief so that an appellate court can review the evidence relied upon by the trial judge in support of his or her findings. It requires "explicit findings of fact and conclusions of law so that all interested parties and a reviewing court can determine the legal and factual basis upon which a decision is made." *Torres v. Aulick Leasing*, 258 Neb. 859, 863, 606 N.W.2d 98, 102 (2000). It also requires a record that elucidates the factors contributing to the lower court's decision. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013).

Here, in its order, the compensation court indicated its belief that Tunink's depression and anxiety will improve once he can work again. The court then ordered Continental Fire to pay for Tunink's depression and anxiety medication. However, the compensation court never made an explicit finding that Tunink's depression and anxiety were caused, or at least exacerbated, by the May 2019 work-related accident. Nor does the compensation court indicate what evidence it may have relied on for any causation finding. In fact, in its comments immediately after the trial, the compensation court indicated its belief that Tunink had failed to prove a causal link between the work-related accident and his depression and anxiety.

The Nebraska Supreme Court has previously reversed orders and remanded causes under Rule 11 when the order of the compensation court was unclear. See, e.g., *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019); *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998); *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996). In a case where the order was ambiguous and contradictory, the Supreme Court said that "[n]either party should prevail on the basis of an ambiguity." *Owen v. American Hydraulics*, 254 Neb. at 695, 578 N.W.2d at 64.

The award before us is similarly unclear. First, it is not at all clear that the compensation court found, based on the evidence presented, that Tunink's depression and anxiety was caused by the work-related accident. As such, it is not clear that Continental Fire should be responsible for Tunink's depression and anxiety medication. In addition, even if we could glean causation from the court's decision, the parameters of the compensation court's decision are not clear, including whether Continental Fire is required to pay for Tunink's past use of such medicine, his future use, or both. Finally, the award does not address whether Continental Fire will have to pay any other medical expenses associated with Tunink's depression and anxiety.

Ultimately, we conclude that the compensation court's award as to Tunink's depression and anxiety is confusing and unclear. As such, we vacate that portion of the award and remand the

cause for further proceedings. On remand, the compensation court shall, inter alia, enter an order based on the existing record, clarifying its finding regarding the causation of Tunink's depression and anxiety and, if necessary, clarifying Continental Fire's economic obligations as a result of Tunink's psychological condition.

*Vocational Rehabilitation Services.*

In its brief on appeal, Continental Fire asserts that the compensation court erred in determining that Tunink was entitled to vocational rehabilitation benefits or, in the alternative, erred in failing to define the parameters of those benefits. In the estate's brief, it asserts that while the award of vocational rehabilitation benefits by the compensation court was proper, such award is now moot given that Tunink is deceased. And, in Continental Fire's reply brief, it agrees with the estate that this issue is now moot due to Tunink's death.

We agree with the parties that the issue of Tunink's entitlement to vocational rehabilitation benefits is moot given that Tunink is deceased. An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018). A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive. *Id.* Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation. *Id.*

One of the primary purposes of the Nebraska Workers' Compensation Act shall be the restoration of an injured worker to gainful employment. See Neb. Rev. Stat. § 48-162.01(1) (Reissue 2021). Typically, vocational rehabilitation benefits are awarded to workers who can no longer perform work for which they have previous training, and who need assistance with retraining and job placement to obtain suitable employment after an injury. See § 48-162.01(3). Here, Tunink died soon after the compensation court entered its order. As such, he was unable to participate in any vocational rehabilitation programming. The compensation court's award of this benefit was rendered moot by Tunink's death.

## CONCLUSION

Upon our review, we affirm that portion of the compensation court's award which determined that Tunink's May 21, 2019, work-related accident caused permanent impairment to his right foot. However, we reverse that portion of the court's award which awarded Tunink with payment for his depression and anxiety medication, as the court's determination in this regard was not a reasoned decision containing facts and conclusions of law pursuant to Rule 11. We remand the cause with directions for the court to enter an order based on the existing record, clarifying its finding regarding the causation of Tunink's depression and anxiety and, if necessary, clarifying

Continental Fire's economic obligations as a result of Tunink's psychological condition. Finally, we agree with the parties that the issue of whether Tunink was entitled to vocational rehabilitation benefits was rendered moot by Tunink's recent death.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.